FILED & ENTERED

JAN 25 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egonzale DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Holly Elizabeth Winzenburg<br><br>Debtor(s). | Case No.: 1:13-bk-16084-VK<br><br>CHAPTER 7<br><br>**ORDER FOR SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION**<br><br>Date: January 25, 2022<br>Time: 10:00 AM<br>Courtroom: 303 |

The hearing on the Order to Show Cause as to the amount of the sanctions was held on January 25, 2022. Ahren Tiller appeared for Ms. Winzenburg and Charles Oxton appeared on behalf of Eric Gans. The Court had previously posted its tentative ruling and both parties submitted on the tentative ruling.

The following is now entered as the ruling of the Court, which is awarding the moving party the amount of $34,472.50. This is to be paid within 60 days of the entry of this order by way of a check to the Client Trust Account of Bankruptcy Law Center.

-1-

## The Memorandum of Ruling

Bankruptcy Law Center seeks $44,709 in attorney's fees and costs incurred to rectify Eric Gans' violation of the discharge injunction. The time sheets are attached.

Opposition

Per the declaration of Mr. Gans, he has offered $7,500 to resolve the issues of attorney's fees and costs. [He does not specify when this offer was made.] Mr. Gans admits that he erred in not returning the $1,000 when demanded and also it was a failure of judgment to rely on Ms. Winzenburg's mortgage broker to prepare the necessary documents. Beyond the statement of hardship that he would face in a large award, he emphasizes that until the end, Ms. Winzenburg's attorneys focused on the alleged violation of the automatic stay and that the Court found that no violation had occurred. He emphasizes that he did not intend to keep the lien on the property and that only at trial did it come out that Ms. Winzenburg suffered no damages from the delay in that the initial refinance did not close due to other issues (and apparently her own choice) and the second refinance closed.

He requests that the Court limit the sanctions to $7,500, which is a large amount for him

Reply

Mr. Gans makes numerous false statements. He fails to acknowledge that the OSC would never have been filed if he had simply returned the $1,000 to Ms. Winzenburg as her attorneys requested in a phone call on March 11, 2021.

Mr. Gans is incorrect that the settlement demands made by Debtor's counsel were always tied to an admission that Mr. Gans intentionally caused Debtor damage or that he admit that Mr. Gans intentionally violated the automatic stay. In actuality it was Mr. Gans and Mr. Oxton who repeatedly demanded that any voluntary return of the $1,000 was of a voluntary payment by Ms. Winzenburg. The Court found Mr. Gans'

-2-

assertion to be false. As part of this reply, counsel includes an email from Mr. Tiller dated 4/9/21 which states that Gans must remove the lien and return the $1,000. There is nothing in this email that ties it to the automatic stay. But in response, Mr. Gans states that he will have his mother return it "with the specific understanding that that sum of money was volunteered by her, and had nothing to do with the Estate collecting on the underlying discharged debt."

Even after the initial hearing on the OSC, Mr. Oxton wrote that Mr. Gans, as a gesture of goodwill, would return the $1,000 "on the specific understanding that they represent a return of monies volunteered by Ms. Winzenburg." He continued that this was paid by her long after the 2019 refinance effort and was not an attempt by the Estate to collect on the underlying discharged debt.

As to the contention that the phone call of May 2021 in which Mr. Bodie conditioned demand for the return of the $1,000 on an explicit admission that Mr. Gans had violated the automatic stay, this is incorrect. The only phone conversation was on 5/26/21, which was 5 days after Mr. Gans had refunded the $1,000.

Mr. Gans does not mention the 7/2/21 settlement offer that Debtor's counsel made for $5,000, with a warning that if this goes forward, Mr. Gans would likely be liable for costs. At the time of the settlement offer, much more work had been done than $5,000. And counsel offered an installment payment plan.

Because Mr. Gans had refused to refund the money, the OSC had to be filed because this was the only recourse.

As to Mr. Gans assertion that he has paid thousands of dollars to Mr. Beall, there is no indication that Mr. Beall did any work on this case. The assertion that he is in considerable debt to Mr. Oxton is not supported in that Mr. Oxton appears to be a partner of Mr. Gans. As to Mr. Gans' ability to pay, it appears that he is the owner of real estate gifted by his mother from his father's estate and that real estate is worth about $1,7 million.

Movant requests that the court use the lodestar approach to calculate the award.

Proposed Ruling

This is a sad situation. As noted in my initial memorandum, it starts in confusion because it appeared that the recording of the abstract of judgment was an intentional violation of the automatic stay due to the closeness of dates between the recording and the filing of the bankruptcy case. Once the facts were put forth, that issue was resolved, but not until the Court's memorandum of 12/21/22 [dkt. 47]

The Court is confused by Mr. Gans assertion that he paid thousands of dollars to Mr. Beall in this case. Although the docket reflects that Mr. Beall filed the response [dkt. 26], the objection [dkt. 39], the hearing brief [dkt. 42], and the opposition to attorney's fees [dkt. 50], all of these documents are on the pleading paper of Mr. Oxton and Mr. Beall did not sign any of them. It does appear that the only relationship with Mr. Beall was that he allowed his office to file the documents through the court's electronic filing system. Apparently Mr. Oxton has never taken the time to register to use this system. In fact, Mr. Beall is an expert in bankruptcy law, which is his sole area of practice. [See webpage for Beall and Burkhardt]. It is hard to believe that Mr. Gans actually consulted with Mr. Beall in that he would likely have gotten sage advice on returning the money and settling the case. It is also hard to believe that he paid Mr. Beall thousands of dollars.

As to Mr. Oxton, as noted in the Memorandum of Opinion, the Court has no information about the financial arrangements between Gans and Oxton - partners? suite mates? But they do not seem to have an arms length relationship.

Now, for the first time, Mr. Gans offers a settlement figure - $7,500 - and only after he has seen the request for over $40,000. It is sad that this could have been settled for $1,000 in the spring of 2021or $5,000 in the summer of that year. Neither took place.

The Lodestar method is a two-step approach. What is the reasonable hours, rate, and work done and then are there mitigating factors? This is similar to the

sanctions mandate for violation of the discharge injunction: did the violation take place and then is there a subjective element in the amount of sanctions.

Having said this, the Court is aware that the only damage suffered by Ms. Winzenburg other than any fees that she has paid or owes to her attorney was the several month delay in the return of the $1,000 payment and, as noted in the Memorandum of Opinion, this does not appear to have delayed the closing of her second refinance attempt. So all damages are for attorney fees and the Court seriously doubts that she is liable for all, any, or most of those for the simple reason that no reasonable person would agree to pay an unknown amount merely to punish Mr. Gans, particularly after she received the $1,000 refund. Having said that, the Court is again dismayed by Mr. Gans penchant to embellish the truth. I would like to see the payments and time records from Mr. Beall. Similarly, I would like more information on the arrangement with Mr. Oxton. But I don't think that this is necessary at this time.

The hourly rate agreed to by Ms. Winzenburg was $500/hr for Ahren Tiller, $375/hr for Brett Bodie, and $100/hr for paralegals. The breakdown is

Tiller - 80.1 hours

Bodie - 9.2 hours

Paralegals - 3.6 hours.

The Court needs to look at several issues in determining the sanctions award and this allows a subjective approach. As to the total demand, the Court is looking at its normal method of determining whether the work that was done was handled in an efficient and reasonable manner by a professional who is charging a proper rate for the level of competence and experience that is needed.

Mr. Tiller is a highly qualified bankruptcy attorney, but this case did not require any special expertise or legal research. It therefore was not reasonable that he, rather than Mr. Bodie (who as the original attorney on the bankruptcy case), should have done this work at the higher rate. However, because Mr. Bodie was a witness, it was best

that Mr. Tiller be present for that part of the trial, which the Court estimates should be about 5 hours including preparation to examine Mr. Bodie and travel.

REQUEST

| | | | |
|---|---|---|---|
| AT | 500 | 80.1 | 40050 |
| BB | 375 | 9.2 | 3450 |
| PARALEGAL | 100 | 3.6 | 360 |
| TOTAL | | | 43860 |

AWARD

| | | | |
|---|---|---|---|
| AT | 500 | 5 | 2500 |
| AT | 375 | 75.1 | 28162.5 |
| BB | 375 | 9.2 | 3450 |
| PARALEGAL | 100 | 3.6 | 360 |
| | | | 34472.5 |

Breaking down the fees into time groups prior to trial preparation and trial, it shows the following:

| | hours | at listed rate | at $375 |
|---|---|---|---|
| TOTAL BEFORE TRIAL PREP | 31.6 | 15075 | 11850 |
| TOTAL THRU 5/21 | 29.2 | 13950 | 10950 |
| From 5/21-7/2 | 2.4 | 1125 | 900 |

In determining the award there are other issues to be considered. By May 21, 2021, Mr. Gans had released the lien and returned the $1,000. Up to this point, the fees totaled $13,950 or, at the reduced rate, $10,950. The declaration of Mr. Bodie describes a $5,000 settlement demand that he made on 7/2/21, but that Mr. Gans

turned it down and never made any settlement proposal. Between the May 21 compliance by Gans and the July 2 settlement proposal, the firm incurred only another $1,125 (or $900 at the reduced rate).  Mr. Gans' refused to negotiate a settlement and that required the vast jump in work and fees that occurred.

It appears that Debtor's counsel were quite reasonable in their actions.  Prior to May 21, they did the work that was necessary to force Mr. Gans to complete the documentation and to refund the $1,000.  Between May 21 and July 2 they did minimal work and their settlement proposal of $5,000 was also quite reasonable given that they had already incurred over $10,000 in fees and put 31.6 hours into this case.

But once Mr. Gans refused to negotiate, Debtor's counsel had only 2 choices: either to eat the time spent (or perhaps obtain some partial compensation from Ms. Winzenburg, depending on their fee agreement) or go forward.  So, while it seems improper to award in excess of $30,000 in fees for a violation of $1,000, Debtor's counsel had no other choice and by then the violation had grown to include the fees incurred thus far, which was in excess of $10,000.  Of course, the parties could have mediated this dispute, but the failure of Mr. Gans to respond to the July 2 settlement proposal indicates his disinterest in that avenue.

As noted in the Memorandum of Opinion, the Court is most disturbed about the fictitious story that Mr. Gans placed into evidence. His continued refusal to deal with the violation of the discharge injunction leans heavily on awarding the full fees incurred, with the caveat as above of the reduction in hourly rate.  Thus, the award will be for $34,472.50.

The other subjective factor is the financial condition of Mr. Gans.  There is evidence that he owns a $1.7 million house, though the liens are not described.  He claims that his father's estate was small. but there is no evidence of this.  He asserts having spent thousands for fees to Mr. Beall and even more for Mr. Oxton.  Again, there is no evidence (although these are not really relevant since his defense was not a valid one).

If he wishes to provide the Court with evidence of his financial condition and that of his legal practice, I will consider reducing the award or working out a payment plan. This is simply not the kind of situation where someone should be put in dire straits.

###

Date: January 25, 2022

Geraldine Mund
United States Bankruptcy Judge